# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DENNIS STEELE,** | : | **CIVIL NO. 3:16-CV-1341** |
| | : | |
| **Petitioner,** | : | **(Judge Caputo)** |
| | : | |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **ERIC LINHARDT, et al.,** | : | |
| | : | |
| **Respondents.** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This case presents an unusual claim for habeas corpus relief.  The petitioner, Dennis Steele, is awaiting retrial on state charges, having experienced a mistrial in his initial state court trial on charges relating to the alleged sexual exploitation of his own granddaughter.  Following the declaration of this mistrial, which was inspired by the answer to an improvident and potentially prejudicial question posed by defense counsel at trial, Steele asserted a double jeopardy bar to his retrial in state court.  This double jeopardy claim was rejected by the state trial and appellate courts.  After the claim was rebuffed in state court, and as his retrial approached, Steele filed the instant federal habeas corpus petition.  In this petition, Steele invokes this Court's habeas corpus jurisdiction and seeks a pre-trial determination from the federal courts that this

retrial following a declaration of mistrial at his first trial offends the Fifth Amendment's Double Jeopardy clause.

For the reasons set forth, it is recommended that this petition be denied.

## II.   <u>Statement of Facts and Case</u>

The pertinent facts set forth in the petition can be simply stated:  On February 21, 2012, the petitioner, Dennis Steele, was arrested by state authorities and charged with involuntary deviate sexual intercourse, sexual assault, aggravated indecent assault, and indecent assault.  These charges arose out of what was alleged to have been sexual contact between Steele and his own grandchild in February of 2012.

Steele's trial on these sexual exploitation charges was initially scheduled in October of 2013.  As the initial trial date approached, Steele's trial counsel filed a motion seeking leave to cross-examine the victim in this case regarding her sexual history.  Steele's counsel was required to seek leave of court to conduct cross examination into this area because Pennsylvania's rape shield law generally forbids presentation of evidence relating to a victim's past sexual conduct. 18 Pa. C.S. §3104. Here, Steele sought leave to explore the victim's sexual history at trial in order to support his claim that this sexual contact was consensual, and Steele specifically sought to elicit testimony relating to the victim's sexual activity with her boyfriend, activity which allegedly took place near in time of Steele's own sexual encounter with

his grandchild.  (Doc. 9, Ex. 3.)  Following an evidentiary hearing conducted on October 14, 2013, and oral argument on October 16, 2013, the trial judge entered an order denying Steele's motion for leave to present this evidence, finding that the proffered evidence was not relevant to issues of bias against the defendant, and concluding that the probative value of this evidence on questions of consent was far outweighed by its prejudicial impact.  (Doc. 9, Ex. 4.)  With the court having entered an opinion excluding this evidence from the trial under Pennsylvania's rape shield law, the parties proceeded to trial the following day, on October 17, 2013.

At trial, this precluded evidence was elicited from the victim in the course of Steele's counsel's cross examination of the victim.  This conduct inspired the Commonwealth to move for a mistrial and that motion was granted by the trial court. The entirety of this trial exchange is illuminating and informs consideration of this habeas corpus petition.  Therefore, we set forth the exchange between the court and counsel at length below.

As defense counsel was cross-examining the victim, the following exchange took place:

> **Q** What time did you go to sleep that – that would be the midnight on
> the 14th of February?
> A I don't know what time I went to bed that night.  I can't give you a
> time I actually fell asleep, but I know it was late.
> Q All right. Did anyone come over other – to visit?
> A Yes.

Q Who was that?

A My ex-boyfriend .

Q What time did he come?

A Around three in the morning.

Q Did he stay?

A He did not stay the night.  He was there for an hour and he left.

Q What was he doing for that hour?

**Mr. Biichle**: Objection, Your Honor.

**The Witness:** We were having sex.

**The Court:** Wait, wait, wait.  Come on forward.

**Mr. Biichle:** Your Honor, I think we need to go in chambers for a moment on the record.

**The Court**: All right.  (Whereupon, the following occurred in chambers:)

**The Court**: How can you do that?

**Mr. Campana:** Well, okay, I'll move –

**Mr. Biichle:** It's out there.  She answered it.

**Mr. Campana:** She answered that he came over and stayed for an hour.

**Mr. Biichle:** And she said we were having sex after I objected because I knew exactly where you were going and you knew what that question was going to it was the Rape Shield, that's a mistrial and it's gotta be a mistrial.  It's out there, she answered it, I move for a mistrial—

**Mr. Campana:** You can give them a curative instruction.  If you give him a mistrial it 's double jeopardy.

**Mr. Biichle:** This is a mistrial.

**Mr. Campana:** Double jeopardy.

**Mr. Biichle:** No, it's not.  You know what you are doing, Pete.

**The Court:** Why would you ask that question?  You know what they were doing.

**Mr. Campana:** I asked what he was doing.  I didn't ask what they were doing, first of all.  What was he doing.

**The Court:** What did he ask?  I don't know if it makes a lot of difference.

(Whereupon, the last question was read back.)

**Mr. Biichle:** You Honor, that's a mistrial.

**Mr. Campana:** I didn't – it's not a mistrial.  If you give him a mistrial I'm telling you it's a double jeopardy because it's not manifestly necessary.

**Mr. Biichle:** Your Honor—

4

**Mr. Campana:** You can give them that instruction, but I don't think it was responsive to my question.

**Mr. Biichle:** I'll take the risk whether it's double jeopardy, but I'm taking that risk, Your Honor, that's a mistrial and I move for it right now. It's gotta be. That's the second inappropriate thing that occurred. He know what he was doing and you know he knew what he was doing. It's a mistrial and I want it.

**Mr. Campana:** I don't think it's inappropriate at all for me to explain to the Jury that because there is serious consequences that flow that's why you have to do your duty to establish guilt beyond a reasonable doubt.

**The Court:** No, Pete, you violated the ruling. By asking what he was doing you knew that he had sex with her and by asking that question now, what 's she going to say? What is she going to say? She's going to say--

**The Court:** No. No.

**Mr. Campana:** I didn't say what did you and he do I said what was he doing.

**Mr. Biichle:** Your Honor, make the decision. It's a mistrial.

**The Court**: I have to grant it. I think you 've asked the wrong question.

**Mr. Campana:** It's over my objection.

**The Court:** I understand it's over your objection.

**Mr. Campana:** And we're going to make a motion that double jeopardy applies. I don't think it's manifestly necessary, Judge. You can instruct the Jury.

**The Court:** I can instruct the Jury to what? They are already aware—

**Mr. Campana:** To disregard that she had sex.

**The Court:** No, wait a minute. Disregard they had sex.

**Mr. Campana:** You do it all the time when -- we do it all the time when it comes to–

**Mr. Biichle:** It's the Rape Shield.

**Mr. Campana:** Listen, the Defendant was convicted of perjury, but you can only consider that in determining his credibility you can't really consider that. It's the same kind of thing.

**Mr. Biichle:** Your Honor, the interest of justice have been aborted, it's a mistrial. We'll do it again.

**Mr. Campana:** No you won't because I'm filing a motion.

**Mr. Biichle:** File a motion, Pete.

**Mr. Campana:** Judge–

**Mr. Biichle:** If you are so sure it's double jeopardy then--

**Mr. Campana:** Anything short of -- I mean you can give the instruction that they can disregard the question and the answer.

**Mr. Biichle:** Your Honor, it's-

**Mr. Campana:** Why can't you?

**The Court:** Pete, you know what you did.  I mean you can sit there like Little Lord Fauntleroy saying that you are innocent and that you had no idea that it was going to elicit this kind of response.

**Mr. Campana:** I didn't think she was going to say we were having sex. Honest to God.  Honest to God.

**The Court:** That's crap.

**Mr. Campana:** I thought he would object.

**Mr. Biichle:** I did object.

**The Court:** He did object.

**Mr. Campana:** Not in time.

**Mr. Biichle:** Well, I objected and then --

**The Court:** Look, here's the problem.  When you ask the question --

**Mr. Campana:** I didn't ask were you having sex, Judge.

**The Court:** Be quiet.

**Mr. Campana:** Judge, don't grant a mistrial.

**The Court:** When you ask that question and you require him to object, what do you think?  You think the Jury just fell off the banana boat?  The guy is coming over at three in the morning and you're asking what did he do and--

**Mr. Campana:** I said what he was doing.

**The Court:** He objected.

**Mr. Campana:** He objected.  What are you going to do?  You can't grant a mistrial.

**Mr. Biichle:** Yes, you can.  It's a mistrial.  This would be--

**Mr. Campana:** They knew when he came over at three in the morning what happened.

**Mr. Biichle:** No, they -- well, thank you because you made it clear.

**The Court:** You should have let it go there.  You should have let it go there.

**Mr. Biichle:** I thought you were being clever the way you were doing it, but then–

**The Court:** Yes, I did too; but then you took it--

**Mr. Campana:** I don't think that question - I don't think that question–

**The Court:** No, no, you reached for a bridge too far.
**Mr. Campana:** Judge, don't grant a mistrial. I'm telling you. Give them a cautionary instruction.
**The Court:** Let's do this.
**Mr. Biichle:** No, Your Honor, I 'm not -- Your Honor, I'm going to lose this case because of that. I'm going to lose it and then that little girl is going to walk out of here feeling like a liar, feeling like a dirt bag. I give that guy a fair trial she gets a fair trial because she's on trial just as much as him. It's a mistrial.
**The Court:** All right. You got it.

(Doc. 9.)

Fairly construed, this exchange reflects a ruling by the state trial judge that there was a manifest necessity for a declaration of a mistrial due to the conduct of defense counsel which deliberately elicited highly prejudicial information from the victim in this case, information which the trial judge had excluded from the trial in a written opinion and order issued one day earlier.

Following the declaration of this mistrial, Steele moved in state court to bar his retrial on double jeopardy grounds, arguing that the trial court abused its discretion in granting a mistrial in this case. (Doc. 9, Ex. 6.) The trial court denied this motion, observing that "[d]espite defense counsel's protestations to the contrary, it was clear at the time, and remains clear to this court, that the question posed by defense counsel was intentionally designed to elicit testimony which had, by pre-trial order, been

7

prohibited." (Doc. 9, Ex. 7, p.3.)  The trial court further specifically found that permitting this testimony would have violated Pennsylvania's rape shield law, and concluded that curative instructions would have been inadequate to cure the prejudice that flowed from this conduct.  Therefore, the trial judge found that the mistrial was compelled by manifest necessity and denied the motion to bar Steele's retrial on double jeopardy grounds.  (Id.)

Steele appealed this decision to the Pennsylvania Superior Court which issued an opinion and order on February 24, 2015, affirming the decision of the trial court denying this motion to dismiss on double jeopardy grounds.  (Doc. 9, Ex. 8.)  In its opinion the Superior Court expressly found that exclusion of this testimony was well within the trial court's discretion under Pennsylvania's rape shield law.  The appellate court also agreed that the declaration of a mistrial in this case was compelled by a manifest necessity, and held that defense counsel's explanation that he did not endeavor to elicit this prejudicial information "strains credulity." (Id., p. 9.)  The appellate court also found that the trial court's reasoning that this prejudicial conduct could not be cured by a cautionary instruction was "sound." (Id., p.10.)  Having reached these findings, the Superior Court upheld this mistrial declaration, and the denial of Steele's motion to dismiss on double jeopardy grounds.  (Id.)

Undeterred by these rulings, as his state case proceeded towards a retrial Steele filed this federal habeas corpus petition seeking a pre-trial declaration from the federal courts that the retrial offended double jeopardy principles. This petition has been fully briefed by the parties, (Docs. 9 and 10.), and is now ripe for resolution.

For the reasons set forth below, it is recommended that the petition be denied.

## III.   Discussion

The Double Jeopardy Clause to the Fifth Amendment of the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life and limb." U.S. Const. Amend V. While the Fifth Amendment's Double Jeopardy Clause has potential application to a retrial which follows the declaration of a mistrial, it has long been well-settled that such a retrial following a mistrial does not offend double jeopardy principles if: "taking all of the circumstances into consideration there is a manifest necessity for [declaring a mistrial.]" United States v. Perez, 22 U.S. 579, 579-80 (1824). On this score, it is also abundantly clear that: "trial judges may declare a mistrial 'whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity' for doing so [and] [t]he decision to declare a mistrial is left to the 'sound discretion' of the judge." Renico v. Lett, 559 U.S. 766, 773–74 (2010)(citations omitted).

It is against the backdrop of these settled legal principles–principles which recognize the broad discretion of trial judges to declare mistrials and affirm that a retrial following the declaration of a mistrial based upon manifest necessity does not violate the Double Jeopardy clause–that we consider this habeas corpus petition. While Steele initially filed his petition pursuant to 28 U.S.C. §2254, it is clear that this statute, which provides for habeas corpus relief for persons convicted of state crimes, has no applicable here.  Instead, this state criminal defendant's petition seeking a pre-trial determination of a double jeopardy claim is properly considered under the general federal habeas corpus statute, 28 U.S.C. §2241.  Phillips v. Court of Common Pleas, Hamilton Cty., Ohio, 668 F.3d 804, 809 (6th Cir. 2012); Martinez v. Caldwell, 644 F.3d 238, 241 (5th Cir. 2011).  Moreover, the substantive standards applied to habeas petitions filed by pre-trial detainees raising double jeopardy claims under §2241 are less deferential than those employed in post-conviction petitions filed pursuant to 28 U.S.C. §2254, and permit a *de novo* review of a double jeopardy claim in federal court. Id.

Yet, even under this more forgiving analytical lens, pre-trial double jeopardy habeas corpus claims which challenge a retrial following the declaration of a mistrial are rarely embraced by the federal courts.  See e.g., Phillips v. Court of Common Pleas, Hamilton Cty., Ohio, 668 F.3d 804 (6th Cir. 2012); Martinez v. Caldwell, 644

F.3d 238, 241 (5th Cir. 2011); <u>Klein v. Leis</u>, 548 F.3d 425, 429 (6th Cir. 2008); <u>Green v. Court of Common Pleas</u>, No. CIV.A. 08-1749, 2008 WL 2036828, at *8 (E.D. Pa. May 9, 2008).   Particularly in those cases where the mistrial was compelled by the presentation of improper prejudicial evidence, or other inappropriate conduct by counsel, federal courts are loathe to find that a mistrial declaration, which rested in the broad discretion of the trial judge, was so improper that the bar of double jeopardy now applies and precludes a retrial of the defendant.  <u>Id</u>.  Quite the contrary, in these circumstances, federal courts have routinely rejected habeas petitions which bring double jeopardy claims premised of alleged state trial court errors in declaring mistrials.

So it is in this case.  Here, even when we view this case through a *de novo* standard of review we find, like all of the courts before us have found, that a mistrial was compelled in this case due to a manifest necessity.  This case involved allegations of sexual misconduct by Steele, misconduct involving the sexual exploitation of his own grandchild.  At trial Steele sought to explore his granddaughter's sexual history based upon speculative claims that this sexual history would somehow be relevant to issues of bias and consent.  Those efforts were properly rebuffed by the state trial judge as antithetical to the principles outlined in Pennsylvania's rape shield law, and

11

the court entered a written order on October 16, 2013, which barred presentation of this highly prejudicial evidence at trial.

Yet despite this clear and precise limitation imposed by the trial court on October 16, 2013, the following day, defense counsel elicited precisely the testimony which had been forbidden by the trial judge. The trial judge has found that "it was clear at the time, and remains clear to this court, that the question posed by defense counsel was intentionally designed to elicit testimony which had, by pre-trial order, been prohibited." (Doc. 9, Ex. 7, p.3.) The Pennsylvania Superior Court, in turn, concluded that defense counsel's assertion that this information was not knowingly elicited by counsel "strains credulity." (Doc. 9, Ex. 8, p. 9.) Our own independent, *de novo* review of the record, supports both of these factual conclusions. The information elicited was plainly prohibited by the trial judge in an order which was clear and precise. Further, in the factual context of this case, counsel's inquiry of the victim regarding what her boyfriend did after he came to her room for an hour at 3:00 a.m., presented a clear danger of eliciting this banned testimony, a risk that was patent to all given that all counsel had received investigative reports prior to trial which informed counsel that the victim's truthful answer to that question would disclose her sexual history.

In a sexual assault case, the presentation of this type of explosive, and excluded, evidence before a jury was fraught with an extraordinary potential for grave prejudice. This prejudice could not reasonably be cured through some cautionary instruction. Therefore, the only remaining course available to the trial judge given this violation of its own order excluding evidence was the declaration of a mistrial. Since such a declaration rests in the broad and sound discretion of the trial court, and in this case the unique circumstances confronting the trial court required the court to declare a mistrial, that declaration of mistrial was plainly compelled by a manifest necessity. Therefore, the retrial of Steele following the mistrial instigated by the inappropriate defense cross examination of the victim does not offend double jeopardy, and this petition for writ of habeas corpus should be denied.

### IV. **Recommendation**

Accordingly, for the foregoing reasons, upon consideration of this Petition for Writ of Habeas Corpus, IT IS RECOMMENDED that the Petition be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed

findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 25th day of August 2016.


                                        *S/Martin C.  Carlson*
                                        Martin C. Carlson
                                        United States Magistrate Judge

14